UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re GREGORY SCHMIDT,<br><br>Debtors.<br>———————————————<br>GREGORY SCHMIDT,<br><br>Appellant,<br><br>v.<br><br>SPENCER T. MALYSIAK PROFIT SHARING PLAN,<br><br>Appellee. | District Case No. 2:23-cv-00233-DJC<br><br>Bankr. Case No. 20-25614-A-7<br><br>Bankr. Adversary Case No. 21-02018-A<br><br><br>ORDER |

Appellant Gregory Schmidt has filed the present appeal of the Bankruptcy Court's order and judgment at the conclusion of trial. Appellant originally filed for bankruptcy and Appellee sought to have a debt, in the form of a domesticated judgment, exempted from the discharge of any debts. Appellant appeals the Bankruptcy Court's determination that the domesticated judgment was valid and enforceable as well as its finding that the debt in question was obtained by fraud and thus exempt from discharge under 11 U.S.C. § 523(a)(2)(A).

On November 16, 2023, the Court held oral argument on this appeal. Appellant Gregory Schmidt appeared pro se and Spencer Malysiak appeared on

behalf of the Appellee Spencer T. Malysiak Profit Sharing Plan.[1] (*See* ECF No. 15.) Having reviewed the record and parties' briefing and having heard the argument of the parties, the Court affirms the Bankruptcy Court's order and judgment finding that the Idaho state court judgment was valid and enforceable as it had been timely renewed and that the judgment was exempt from discharge under 11 U.S.C. § 523(a)(2)(A).

## BACKGROUND

### I.     Factual Background

In January 2007, Spencer Malysiak, acting on behalf of Appellee Spencer T. Malysiak Profit Sharing Plan, met with Appellant Gregory Schmidt and his partner, Edward Berr, about the possibility of Appellee investing in an Idaho development project. (Appellant's Br. (ECF No. 5) at 9; Appellee's Br. (ECF No. 7) at 5.) The details of this meeting and subsequent events were contested between the parties at trial but what is clear is that Appellant and Berr initially offered Appellee an "Investment Summary" that proposed a deal in which Appellee would receive a first position loan in exchange for a $2,080,000.00 investment.[2] (Appellant's Br. at 9; Appellee's Br. at 7; *See* Appellee's Excerpts of R. (ECF No. 7-1) at 244.) At some point, Malysiak indicated that Appellee would be unable to provide an investment of that size, and an alternate deal was proposed in which Appellee would instead contribute a more modest sum of $200,000.00. That sum, along with an additional $300,000.00 from others, resulted in a proposed total $500,000.00 loan that included Appellee's investment along with the investments of two other individuals (jointly, with Appellee, "the Investors"). (Appellant's Br. at 9; Appellee's Br. at 7.) Malysiak claims that he told Appellant and

---

[1] Given that Malysiak and Appellee are technically distinct but closely related, the differentiation between them can present challenges. While the distinction does not appear material to the Court's findings, it has nonetheless endeavored to properly identify and distinguish between them wherever possible.

[2] The parties mainly disagree over whether Malysiak was presented with additional deal structures for the prospective investment sometime after the meeting. (*See* Appellant's Br. at 9; Appellee's Br. at 7.) As discussed below, this detail is ultimately not relevant to whether the Bankruptcy Court erred in reaching its decision.

Berr that the Investor's loan must still be in the first position. (Appellee's Br. at 7-8.) Appellant later sent Malysiak a document entitled "Mortgage – Short Covenant" along with a "participation" note. (Appellant's Br. at 9; Appellee's Br. at 9-10.)

After some revisions, the parties executed the Final Participation Note ("Note"), which provided Appellee would contribute $200,000.00 along with $250,000.00 and $100,000.00 from the two other investors, for a total loan of $550,000.00. (*See* Appellee's Excerpts of R. at 257-260.) The Note did not specify the position of the loan. It did contain language indicating that there was a "high loan-to-value" ratio. (*Id.* at 258.) To complete the transaction, Appellant and Berr also obtained a bank loan of $1,400,000.00 which was placed in first position. (Appellant's Br. at 9-10; Appellee's Br. at 10.) Malysiak maintains that he was not informed of this additional bank loan until after the close of escrow (Appellee's Br. at 11) while Appellant claims that Malysiak was aware that Appellant and Berr would still need to obtain the outstanding financing from another source *and* that this additional loan would be in first position (Appellant's Br. at 9-10).

Sometime later, the Idaho development project failed after the holder of the bank loan foreclosed on the property. (Appellant's Br. at 10; Appellee's Br. at 11.) As the Investor's note was in junior position to the bank loan, Appellee and the two other investors in that note lost their secured interest in the Idaho property. (Appellant's Br. at 10; Appellee's Br. at 11.)

Appellee filed suit in Idaho state court against Appellant, claiming that Appellant had fraudulently represented the position of the Note. (Appellant's Br. at 10; Appellee's Br. at 11-12.) Appellee obtained a default judgment against Appellant which was entered on June 10, 2009. (Appellant's Br. at 10; Appellee's Br. at 12.) Appellee later domesticated that Judgment in California in the Sacramento County Superior Court on December 23, 2010. (*Id.*) That judgment was renewed on June 18, 2020. (*Id.*)

**II.     Bankruptcy Court Proceedings**

Appellant filed for Bankruptcy in late 2020.  (Appellant's Br. at 10; Appellee's Br. at 6.)  On March 3, 2021, Appellee initiated an adversarial action, seeking to exempt the domesticated judgment from being discharged on the basis that the money in question was obtained via fraud.  (*Id.*)  In November and December of 2022, the Bankruptcy Court conducted a trial to determine the dischargeability of Appellee's debt.  At the close of trial, the court found the debt was exempted from discharge under 11 U.S.C. § 523(a)(2)(A) and entered judgment to that effect.  (*See* Appellant's Excerpts of R. at 14–16.)  After trial, Appellant sought reconsideration of the Bankruptcy Court's determination at trial that the Idaho state court judgment was valid and enforceable as it had been timely domesticated and renewed.  On January 24, 2023, the Bankruptcy Court issued a written memorandum in which it found that the judgment was valid and enforceable as it had been properly domesticated in California and renewed within the statutory window for renewal.  (Appellant's Excerpts of R. at 3–12.)

Appellant has now appealed the decision of the Bankruptcy Court, arguing that the court had erred in finding that (1) the domesticated judgment had been timely renewed, (2) Appellant had knowingly made misrepresentations, and (3) Appellee justifiably relied on Appellant's misrepresentations.  (Appellant's Br. at 11–13.)

## LEGAL STANDARD

An appellant may petition the district court for review of a bankruptcy court's decision.  Fed. R. Bankr. P. 8013.  The applicable standard of review is identical to that employed by circuit courts of appeal in reviewing district court decisions.  *See Heritage Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir. 1997).  Thus, generally speaking, legal conclusions are renewed on a *de novo* basis, and factual determinations are assessed pursuant to a "clearly erroneous" standard.  *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 792 (9th Cir. 1997) (en banc).  "Whether a

4

requisite element of a § 523(a)(2)(A) claim is present is a factual determination reviewed for clear error." *Tallant v. Kaufman (In re Tallant)*, 218 B.R. 58, 63 (B.A.P. 9th Cir. 1998) (citing *Anastas v. American Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1283 (9th Cir. 1996)).

**ANALYSIS**

**I.     Timeliness of the Renewal of the Domesticated Judgment**

Contrary to Appellant's arguments, the Bankruptcy Court did not err in finding the domesticated judgment to be valid as Appellee renewed the judgment within 10 years of it being domesticated. Under Cal. Civ. Proc. Code § 683.130(a), a judgment may be renewed but the renewal must occur within 10 years of when the judgment is entered. Appellant contends that a domesticated judgment is not a new judgment and thus the date the judgment was "entered" for purposes of renewal is the date it was entered in the originating jurisdiction, regardless of when it was domesticated. Based on this, Appellant argues that Appellee sought to renew the judgment too late, as ten years had already passed from the date the judgment was originally entered in Idaho state court. The Bankruptcy Court's legal conclusion is reviewed *de novo*. *In re Bammer*, 131 F.3d at 792.

California Code of Civil Procedure sections 1710.10 *et seq.* governs the entry and enforcement of sister state judgments. Under Section 1710.25, on application a judgment from another state is entered by the clerk "in the same manner as entry of an original judgment of the court." Cal. Civ. Proc. Code § 1710.25. A later section specifies that, except as otherwise provided, "a judgment entered pursuant to this chapter shall have the same effect as an original money judgment of the court and may be enforced or satisfied in like manner." Cal. Civ. Proc. Code § 1710.35. Thus, when a sister state judgment is entered, it is entered in the exact same manner and to the same effect as a judgment originally entered in California. Cal. Civ. Proc. Code § 1710.25 (domesticated judgments are entered in the same manner as original judgments; Cal. Civ. Proc. Code § 1710.35 (a judgment that is entered via

domestication has the same effect and is enforced in the same manner as an original judgment).

Under California law, a judgment is enforceable within 10 years of when a judgment is entered. Cal. Civ. Proc. Code § 683.020. Any time before the expiration of that period, a judgment may also be renewed for a new 10-year period. Cal. Civ. Proc. Code § 683.130. Given that California law treats the domestication of a judgment as the *entry* of a judgment both in the manner of entry and in effect, renewal under Section 683.130 would be proper within 10 years of the judgment's domestication as the renewal occurred within 10 years of the entry of the judgment. *See id.* ("the application for renewal of the judgment may be filed at any time before the expiration of the 10-year period of enforceability provided by Section 683.020"); Cal. Civ. Proc. Code § 683.020 (providing a period of enforceability of "10 years after the date of **entry** of a money judgment" (emphasis added)); Cal. Civ. Proc. Code § 1710.35 (stating that a judgment is "entered" when it is domesticated under the Sister State Judgment Act). Although no case is squarely on point, the limited cases interpreting California's laws domesticating judgments are consistent with this interpretation. *See Kahn v. Berman*, 198 Cal. App. 3d 1499, 1507 (1988) (referring to a judgment domesticated in California under the sister state judgment act as a "new judgment" with the same effect as an original California judgment); *Washoe Dev. Co. v. Guaranty Federal Bank*, 47 Cal. App. 4th 1518, 1522 (1996) (same).

Here, the judgment against Appellant was domesticated in California on December 23, 2010, and renewal would have been proper any time within 10 years of that judgment's entry. Given the judgment was renewed on June 20, 2020, the renewal was proper under Section 683.130 and a new 10-year statute of limitations would apply to the renewed judgment.

As such, the decision of the Bankruptcy Court that this judgment was properly renewed and was thus valid and enforceable is affirmed.

## II. Finding Debt Was Not Dischargeable Due to Fraud

Appellant contends the Bankruptcy Court erred in finding that 11 U.S.C. § 523(a)(2)(A) applied to the debt. As framed by Appellant, the Bankruptcy Court erred in two ways: (1) finding of fraudulent misrepresentation as this was unsupported by the evidence and (2) "finding appellee justifiably relied on one of multiple versions of an investment circular." (Appellant's Br. at 17, 22.)

Under 11 U.S.C. § 523(a)(2)(A), a debt that would typically be dischargeable as a result of bankruptcy proceedings is exempted from discharge where the money in question was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" 11 U.S.C. § 523(a)(2)(A). "A false representation is an express misrepresentation, while a false pretense refers to an implied misrepresentation or conduct intended to create and foster a false impression." *In re Reingold*, BAP Nos. CC–12–1112–PaDKi, 2013 WL 1136546, at *3 n.4 (B.A.P. 9th Cir. Mar. 19, 2023). For purposes of Section 523(a)(2)(A), "[t]he elements of fraud . . . match the elements of common law fraud and of actual fraud under California law." *In re Jung Sup Lee*, 335 B.R. 130, 136 (B.A.P. 9th Cir. 2005). "In order to establish that the debt had been obtained through fraud . . . the creditor must demonstrate, by a preponderance of evidence, that: (1) The debtor made representations; (2) The debtor knew the representations had been false at the time he or she made them; (3) The debtor made these representations with the intent and purpose of deceiving the creditor; (4) The creditor relied on such representations; and (5) The creditor sustained the alleged loss and damage as a proximate result of these representations." *Id.* (citing *In re Hashemi*, 104 F.3d 1122, 1125 (9th Cir. 1996)). "Whether a requisite element of a § 523(a)(2)(A) claim is present is a factual determination reviewed for clear error." *In re Tallant*, 218 B.R. at 63.

**A.     Knowing Misrepresentation**

The Court concludes that the Bankruptcy Court did not commit clear error in finding that Appellant made knowing misrepresentations to Appellee.  At the trial, the Bankruptcy Court found that Appellant had made representation he knew to be false in "the participation, promissory note and the mortgage short covenant . . . ." (Appellee's Excerpts of R. at 206.)  The court pointed to ten specific words of the participation promissory note that it found to be a clear misrepresentation by Appellant: "[t]his note is secured by that certain deed of trust." (*Id.*; *see* Appellant's Excerpts of R. at 257.)  In the view of the Bankruptcy Court, this statement was both an affirmative misrepresentation and a misrepresentation by omission.  (Appellee's Excerpts of R. at 206.)

As to it being an affirmative misrepresentation, the Bankruptcy Court found that the reference to "that certain deed of trust" was ambiguous and could be interpreted to mean Appellee would be in first position or a subordinate position.  (Appellee's Excerpts of R. at 207–08.)  The court made the factual finding that Berr and Appellant were under pressure to close quickly or lose their option payment and that they needed the $550,000.00 from the Investors to close the gap between the bank's $1,400,000.00 loan and the $2,080,000.00 needed to purchase the property.  (Appellee's Excerpts of R. at 208.)  The Bankruptcy Court also found that Appellant and Berr knew that Malysiak would only agree to the terms of the loan if the Note was in first position but that this was no longer possible with the bank loan that had been secured.  (*Id.*)  Thus, the Bankruptcy Court found that Appellant knowingly made an ambiguous disclosure that had both false and true constructions with the intention that Malysiak would believe the false construction that the Investor's Note was in first position.  (*Id.*)

The Bankruptcy Court also found that Appellant had made a misrepresentation by omission as he had a duty to speak to keep ambiguous statements from being

8

misleading.  (Appellee's Excerpts of R. at 209.)   In this regard, the court made two additional relevant factual findings on this point.  First, the court found that, despite Appellee's claim that there was a meeting in March 2007 where Appellee was informed that he could not receive first position, this meeting did not actually occur. (*Id.*)  The Bankruptcy Court reached this determination by weighing Malysiak's testimony that it did not happen, the corroboration of Malysiak's testimony by the two other investors, and the fact that Appellee's testimony, which was the sole basis supporting the existence of this meeting, was "vague and not credible."  (*Id.*)  The second factual finding was that the inclusion of the "high loan-to-value" statement "did not sufficiently apprise Malysiak that he would be receiving something other than a first deed of trust[]" such that Appellant had not made a knowing misrepresentation. (*Id.*)

The Bankruptcy Court's finding that Appellant made misrepresentations, affirmatively and by omission, was not in error.  The Bankruptcy Court ultimately found that Appellant knew Appellee would only agree to a first position note and made misrepresentations to Appellee, both affirmatively and by omission, to induce Appellee to sign the note, despite the note not being in first position. (Appellee's Excerpts of R.  at 207–08.)  This was based in large part on the Bankruptcy Court's factual finding, based on the testimony presented at trial, that Malysiak had informed Berr and Appellant that "they would only make that loan, or at least Mr. Malysiak would, if [Appellee] was in first position." (*Id.* at 208.)  The court found Appellee's claim that he had informed Malysiak that a first position loan was no longer possible to not be credible based on the evidence presented.  (*Id.*)  The Court gives great deference to the Bankruptcy Court's determinations of credibility as the Bankruptcy Court was the trier of fact.  *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010) ("When factual findings are based on determinations regarding the credibility of witnesses, we give great deference to the bankruptcy court's findings, because the bankruptcy court, as the trier of fact, had the opportunity to note 'variations in demeanor and tone

of voice that bear so heavily on the listener's understanding of and belief in what is said.'"). Appellant has not presented evidence or argument establishing that the Bankruptcy Court's finding the Investors' testimony was more credible than Appellant's was clearly erroneous. Thus, the Bankruptcy Court did not err in finding that Appellant made knowing misrepresentations to Appellee about the position of the Note.

The Bankruptcy Court's finding that the so-called "'high loan-to-value' warning" was insufficient to "apprise Malysiak that he would be receiving something other than a first deed of trust[,]" and thus eliminate Appellant's misrepresentation by omission, was also not erroneous. Appellant argues that Malysiak was a sophisticated investor who was provided with multiple different investment options and that, in light of these alleged facts, Appellant clearly represented that the Investor's loan would be in first position due to the Note stating in part "[i]n consideration of the high loan to value ratio with respect to the real property securing this Note . . . ." (Appellant's Br. at 18; *see* Appellee's Excerpts of R. at 249, 253, 258.) Appellee argues that this language, indicating that the note was a "high loan-to-value note", in concert with the fact that the note only amounted to 27%[3] of the total purchase price, makes it "logically inconsistent [that] Appellee . . . believe[d] the note to be in first position . . . ." (Appellant's Br. at 18–19.)

Though it is logically reasonable that a loan that only amounts to 27% of the purchase price is *less likely* to be in the first position than an alternative larger loan, that alone does not mean that the Note could not be in first position in this case. The inclusion of the "high loan-to-value" warning also does nothing to clearly inform the Investors of the subordinate position of their prospective loan. That language, which is only on the second page of the Note and included in the context of the holder

---

[3] The exact percentage of the Appellee's loan in relation to the total purchase price has inconsistently been referenced as 26% and 27%, likely owing to the fact that the $550,000 loan accounted for closer to 26.44% of the total. This distinction is not material however, so the Court will utilize the 27% number cited in Appellant's briefing.

10

receiving "a participation in any and all profits upon sale" of the property, certainly might suggest to a knowledgeable investor that there is other financing involved. However, the presence of other investors, beyond Appellee and the other two investors who contributed to the Note, does not alone clearly indicate that the Note was in a subordinate position.

At oral argument, Appellant stated that a high loan-to-value would likely constitute a loan over 50 percent of the property.[4] (Tr. of Hearing at 12.) With the Note provided to the Investors making up 27% of the property's value, it is plausible that this was the largest investment received in a situation where the total loans constituted more than 50% of the purchase price.  For example, a single additional loan for 25% of the purchase price, less than the 27% loan provided by the Investors, would create a total combined loan value of over 50%, with the Investor's loan still being the largest single loan.  Even if a high loan-to-value ratio is properly considered a higher portion of the total purchase price than 50%, there is still the possibility that the remainder of the financing came from multiple loans, not a single additional loan. Moreover, while in a vacuum it may be a reasonable assumption that a smaller loan would be subordinate to the largest loan, in the context of Berr and Appellant's affirmative statements that the loan would be in first position and the inclusion of misleading terms elsewhere in the deed of trust, such an assumption is plausible and the Bankruptcy Court's finding to that effect is not clearly erroneous.

Appellant also argues that the Appellee also "received other potential deal structures from Berr with varying returns on investment ranging from 20% to 54% . . ."

---

[4] It does not appear that there is a single consistent definition of what constitutes a high loan-to-value ratio.  As noted, at oral argument, Appellant stated that it constitutes "anything over 50 or even 60 percent." (Tr. of Hearing (ECF No. 17) at 12.)  Black's Law Dictionary ambiguously provides that a high loan-to-value is "the highest ratio that lenders will agree to without requiring the debtor to buy mortgage insurance[,]" though the example it provides of a high loan-to-value ratio is a loan that is worth 80% of the property's value. *Loan-To-Value Ratio*, *Black's Law Dictionary* (11th ed. 2019). Regardless, Appellee does not appear to contend that a loan that constitutes 27% of a property can be considered a high loan-to-value on its own, nor does the Court know of any authority in support of this proposition.  Thus, as stated above, it is a reasonable assumption based on this statement that other financing was present.

(Appellant's Br. at 18) but that fact is not particularly probative.  As an initial matter, Appellant does not provide a citation to evidence that could have established this fact. (*See id.*)  In any event, even if it were properly established at trial, this alleged fact is still consistent with the Bankruptcy Court's findings.  The Bankruptcy Court found that after the Appellant and Berr had approached Appellee about making a $2,080,000.00 loan, Appellee had informed them that he would only be willing to provide a loan for a smaller amount but that it still needed to be in the first position.  Appellant even states in his reply brief that these additional options were provided at a later time. (Appellant's Reply at 10.)  The fact that Appellant and/or Berr presented additional investment options does not make erroneous the Court's factual findings that Appellee would only accept a first position loan and that Appellant, knowing this, had made misrepresentations – affirmatively and by omission – in the Note.

Appellant also appears to briefly argue that the Bankruptcy Court erred in finding he had made a knowing misrepresentation because the court's decision held Appellant liable for Berr's actions and imputed knowledge from Berr to Appellant both in that Appellee had demanded a first position loan and that Berr was obtaining a first position loan from the bank.  It is not clear that the Bankruptcy Court did actually hold Appellant liable for Berr's actions.[5]  However, this point is irrelevant as 11 U.S.C. § 523(a)(2)(A) applies to prevent discharge where a debt was "obtained by" false pretenses, false presentation, or fraud.  It does not specify that the fraudulent act was committed by a specific person or party.

The purpose of Section 523(a)(2)(A) is to bar the discharge of a debt, not to determine liability for fraud.  *Bartenwerfer v. Buckley*, 598 U.S. 69, 83 (2023) ("innocent people are sometimes held liable for fraud they did not personally commit, and, if

---

[5] In making its final decision, the Bankruptcy Court made what seem to be specific findings about Appellant's knowledge and actions, not Berr's. (*See* Appellee's Excerpts of R. at 206–213.)  While the court did discuss Berr's involvement, the relevant factual findings, particularly on the knowing misrepresentation portion at issue here, are that Appellant personally knew the position of the loan would cause Appellee to back out of the deal and that Appellant made the misrepresentation to Appellee. (*Id.* at 207–208.)

12

they declare bankruptcy, § 523(a)(2)(A) bars discharge of that debt.")  As noted by Appellant in his reply brief, the *Bartenwerfer* Court specific emphasized that liability is instead determined by the state law that created the original debt and that Section 523(a)(2)(A) simple "takes the debt as it finds it."  *Id.* at 81–82.  Based on this, Appellant argues that the Bankruptcy Court needed to first find that Appellant was liable under Idaho law before applying Section 523(a)(2)(A) as Appellee's debt was obtained via default judgment and there was "never adjudication on the merits." (Appellant's Reply at 9.)  Such a step is unnecessary.  As already noted, Section 523(a)(2)(A) "takes debt as it finds it."  The Idaho state court entered a judgment holding Appellant liable, (*see* Appellee's Excerpts of R. at 290-91)  and that determination of liability for the debt is conclusive, regardless of whether or not it was obtained by default.   That is to say, an Idaho state court has already determined that Appellant was liable under Idaho law.  The sole role for the Bankruptcy Court was to determine whether or not this debt was for money obtained by fraud and thus subject to Section 523(a)(2)(A).[6]  As such, the Bankruptcy Court did not err in failing to determine if Appellant was personally liable for the fraud.

### B. Justifiable Reliance

Appellant's second argument, that the Bankruptcy Court erred in holding Appellee justifiably relied on the misrepresentations of Appellant, also fails as the Bankruptcy Court did not err in finding Appellee acted with justifiable reliance on Appellant's representations.  Appellant argues that as Appellee had prior investment experience and was an attorney, Appellee could not justifiably rely on Appellant's representations while failing to make inquiries about the terms of the agreement and

---

[6] The present case is notably distinct from other cases where bankruptcy courts have examined whether a default judgment had a preclusive effect over whether a debt was obtained via fraud.  *See e.g.*, *Younie v. Gonya (In re Younie)*, 211 B.R. 367 (B.A.P. 9th Cir. 1997).  Here, the Bankruptcy Court did not make any determination that the Idaho state court's default judgment had a preclusive effect on whether the debt was obtained via fraud.  Instead, the Bankruptcy Court separately determined that the debt was obtained by fraud.  Similarly, the Court also makes no determination as to whether collateral estoppel applies to that finding.

13

the position of the note. (Appellant's Br. at 23-24.) Specifically, Appellant emphasizes the fact that Appellee was provided a copy of the note and made revisions to it prior to signing but failed to inquire about the meaning of the "high loan-to-value" language contained therein. (*Id.*)

The Supreme Court has held that unlike other subsections of Section 523 which require a party act with reasonable reliance, subsection (a)(2)(A) only requires that the party act in "justifiable reliance" for that subsection to apply. *Field v. Mans*, 516 U.S. 59, 72-75 (1995). Citing the Second Restatement of Torts, the Court explained that reliance can act justifiable even though "he might have ascertained the falsity of the representation had he made an investigation." *Id.* at 70. This means that a party can still be in justifiable reliance even where they are "negligen[t] in failing to discover an intentional misrepresentation." *Citibank v. Eashai (In re Eashai)*, 87 F.3d 1082, 1090 (9th Cir. 1996). However, justifiable reliance does not permit a person to "rely on preposterous representations or close his eyes to avoid discovery of the truth[]" and they "cannot rely on a representation if he knows that it is false or its falsity is obvious to him." *Id.* at 1090-91. "The determination of justifiable reliance is a question of fact subject to the clearly erroneous standard of review." *Kirsh v. Kirsh (In re Kirsh)*, 973 F.2d 1454, 1456 (9th Cir. 1992).

Given all the evidence before the Bankruptcy Court, the court did not clearly err in finding that Appellee acted in justifiable reliance on Appellant's representations. As noted by the Bankruptcy Court in its ruling, Malysiak was purportedly a lawyer of thirty years and an investor with above-average experience. The Bankruptcy Court found that there were several of what the court referred to as "red flags" for an individual of Malysiak's experience including the "high loan-to-value" language, the high interest rate for the length of an investment, "the lack of escrow instructions[,] and anemic prospectus . . . ." (Appellee's Excerpts of R. at 211-12.) However, the court found that while the presence of these "red flags" might indicate negligence by Appellee, the

representations made by Appellant were not "preposterous" and thus Appellee acted in justifiable reliance on them. This finding was not clearly erroneous.

The "red flags" identified by the Bankruptcy Court did not establish that Appellant's representations were preposterous or known to be false; they were simply indications that Appellant may have been misrepresenting the position of the Note. For example, as discussed above, the "high loan-to-value" language could suggest the presence of additional large financing that would demand the first position and that Appellant misrepresented the position of the Note but it could also suggest the existence of additional financing that was not of a higher priority to the Note. This "high loan-to-value" language, as well as the other "red flags", only provide indications of a misrepresentation that could become apparent on further investigation; they do not make it Appellant's misrepresentation obvious, *see Eashai*, 87 F.3d at 1090-91, or make Appellee's reliance on Appellant's representations not justifiable, *Field*, 516 U.S. at 70 ("a person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation." (citation omitted)). Accordingly, the Court finds that the Bankruptcy Court did not err in finding Appellee justifiably relied on Appellant's misrepresentations.

In light of the above, the Court finds that the Bankruptcy Court's findings that Appellant knowingly misrepresented the position of the Note and that Appellee acted in justifiable reliance were not clearly erroneous and the judgment of the Bankruptcy Court is affirmed.

**REQUEST FOR APPEAL TO BE FOUND FRIVOLOUS**

Appellee requests that the Court should find the present appeal frivolous and award Appellee's costs, damages, and attorney's fees. (Appellant's Br. at 23–25.) District Courts reviewing appeals from the Bankruptcy Court can impose sanctions for frivolous appeals. Fed. R. Bankr. P. 8020. An appeal is frivolous "where the result is obvious or the appellant's arguments are wholly without merit." *Gomez v.*

*Stadtmueller (In re De Jesus Gomez)*, 592 B.R. 698, 708 (B.A.P. 9th Cir. 2018) (citations omitted). The Court declines to find that the appeal is frivolous.

Here, the result of Appellant's appeal is not obvious nor are Appellant's arguments without merit.  The issue of whether the Idaho state court judgment was timely renewed raises reasonable legal questions that other courts have not directly confronted.  While the Court above finds that the Bankruptcy Court was correct in finding that the judgment was valid as it had been timely renewed, this question is not one with an obvious result or that had been clearly rejected in prior decisions.

As such, the Court will not find Appellant's appeal to be frivolous.  *See In re De Jesus Gomez)*, 592 B.R. 698, 708; *see also Southern California Sunbelt Developers v. IBT International, Inc. (In re Southern California Sunbelt Developers, Inc.)*, 412 Fed. Appx. 990, 992 (finding that an appeal should not be found to be not wholly without merit merely because it rests on arguments the court ultimately found to be unpersuasive or novel).

## MOTION FOR TEMPORARY RESTRAINING ORDER

Appellant's motion for Temporary Restraining Order (ECF No. 19) is denied as it concerns issues not before this Court on an appeal from the Bankruptcy Court's order and judgment.  A temporary restraining order is only proper where there exists a relationship between the injury claimed in the motion for injunctive relief and the conduct that underlies the action.  *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015).  The relief sought in the motion must be "of the same character as that which may be granted finally."  *Id.*

In his motion, Appellant claims that Appellee improperly sought and obtained a writ of execution from the Sacramento Superior Court for the amount of "the original default judgment" instead of the amount of the judgment obtained in bankruptcy court, which Appellant claims replaced the original default judgment.  This issue is not presently before the Court in this appeal and is entirely unrelated to whether the Bankruptcy Court's order and judgment were properly decided.  *Pac. Radiation*

*Oncology, LLC.*, 810 F.3d at 636; *see also In Re Wade*, No. 14-cv-03453-LHK, 2014 WL 5088258, at *3 (N.D. Cal. Oct. 9, 2014) ("a party cannot raise an issue on appeal that was not properly presented to the Bankruptcy Court").  Moreover, Appellant's motion will be rendered moot by this order given the Court shall affirm the Bankruptcy Court's order and judgment and close this case.  Accordingly, Appellant's motion for Temporary Restraining Order is denied.

## CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that the Bankruptcy Court's order and judgment is AFFIRMED.  Appellant's Motion for Temporary Restraining Order (ECF No. 19) is DENIED.  The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **March 5, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC1 – schmidt23cv00233.Bankr_Appeal